# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2653 | **DATE** | 7/10/2000 |
| **CASE TITLE** | Richard L. Turner, etc. Vs. Fuji America Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order, Fuji's motion to dismiss (4-1) is denied and its existing Answer to count II is modified accordingly.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUL 11 2000 | |
| | Notified counsel by telephone. | date docketed | 7 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 7/10/2000 | |
| | | date mailed notice | |
| SN | courtroom deputy's initials  00 JUL 10 AM 7:03 | SN | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD L. TURNER, etc., )
 )
        Plaintiff, )
 )
 ) No. 00 C 2653
v. )
 )
FUJI AMERICA CORPORATION, )
 )
        Defendant. )

MEMORANDUM OPINION AND ORDER

Fuji America Corporation ("Fuji") has moved under Fed. R. Civ. P. ("Rule") 12(b)(6) to dismiss one of the three counts in the Complaint filed against it by its former sales representative Richard Turner ("Turner"): Count II, which asserts Fuji's claimed violation of the Illinois Sales Representative Act ("Act," 820 ILCS 120/1 to 120/3[1]). For the reasons stated in this memorandum opinion and order, Fuji's motion is denied and its existing Answer to Count II is modified accordingly.

Because the resolution of Count II's legal sufficiency turns on the application of the statutory provisions to the factual matrix involving the litigants, this opinion begins with a quotation of the immediately relevant portions of the Act, Sections 1(1), 1(3) and 1(4):

> (1) "Commission" means compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount

---

[1] Citations to provisions of the Act will take the form "Act §--," omitting the statutory codification designation (820 ILCS 120) and using only the Act's internal section numbering.

of orders or sales or as a percentage of the dollar
amount of profits.

* * *

(3) "Principal" means a sole proprietorship,
partnership, corporation or other business entity
whether or not it has a permanent or fixed place of
business in this State and which:

(A) Manufactures, produces, imports, or
distributes a product for sale;

(B) Contracts with a sales representative to
solicit orders for the product; and

(C) Compensates the sales representative, in
whole or in part, by commission.

(4) "Sales representative" means a person who
contracts with a principal to solicit orders and who is
compensated, in whole or in part, by commission, but
shall not include one who places orders or purchases
for his own account for resale or one who qualifies as
an employee of the principal pursuant to the Illinois
Wage Payment and Collection Act.

As for the factual matrix, the familiar Rule 12(b)(6) teaching, definitively announced by the Supreme Court in <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), has been agreed by the litigants to have been accurately stated at Fuji's Mem. 3:

When deciding a motion to dismiss under Federal Rule of
Civil Procedure 12(b)(6), the court must accept all
factual allegations in the complaint as true and draw
all reasonable inferences in favor of the plaintiff.

In those terms, the situation is that Turner had been Fuji's exclusive independent sales representative for the sale of capital equipment to electronic manufacturers in a four-state territory ("Territory") for some 14 years through the end of 1998 (Complaint ¶8). Their oral agreement called for a 10% commission

2

payable to Turner on all sales in the Territory (except perhaps for any special deals) (id.).

Then about December 30, 1998 Fuji notified Turner that it was terminating the parties' relationship and their oral agreement (Complaint ¶11). As always, of course, there were a good many orders and prospective orders in the pipeline with the various customers with whom Turner had established such a long track record (id. ¶13). To address that issue Turner met with Fuji representatives and representatives from Turner's successor as sales representative in the Territory (a company known as "Restronics") on January 11, 1999 (id. ¶14). That meeting resulted in an oral agreement under which:

1. Turner would assist Fuji in facilitating the transition process by setting up a meeting with the principal customer in the Territory, Motorola, Inc. (which had a facility in Mt. Pleasant, Iowa).

2. Turner also agreed not to compete with Fuji by selling any competitive equipment in the Territory during the rest of 1999.

3. In turn, Fuji agreed to a "split commission plan" ("Plan") under which Fuji would pay Turner for all sales made in the Territory from January 11 through December 31, 1999, on a declining scale basis as to all Motorola sales (beginning with 100% of the commission on orders during the

3

first 90 days after January 11, 1999) and on a straight 50%
basis as to the 1999 sales made to all other customers in
the Territory.

Those matters are set out and covered in more detail in Complaint ¶¶15 and 16.

That atmosphere of sweetness and light proved to be only temporary despite Turner's having lived up to his end of the bargain (Complaint ¶17), not only in the just-described specific respects as to the Motorola transitional meeting and as to noncompetition but also in Turner's having continued to call on Fuji's customers in the Territory during 1999 to facilitate pending sales. Yet Fuji made no commission payments to Turner under the Plan (id. ¶¶18 and 20). Instead it has taken the position that any arrangements for the payment of commissions to Turner were between Turner and Restronics, with Fuji having no responsibility therefor (id. ¶19).

To shift from that factual scenario to the parties' legal positions, Fuji takes the simplistic approach that what Turner is suing on is a settlement agreement and not a sales commission agreement, so that the Act is not in play at all. To that end Fuji seeks to rely on a decision by this Court's colleague Honorable James Alesia in <u>AA Sales & Assocs., Inc. v. JT & T Prods. Corp.</u>, 48 F.Supp.2d 805 (N.D. Ill. 1999), which rejected a claim under the Act by a former sales representative that was

4

suing for the claimed breach of a "Settlement Agreement and Mutual General Release" that had been entered into to resolve earlier litigation between the former sales representative and its former principal. In that regard Judge Alesia said (id. at 808):

> The money which defendants have not paid plaintiffs is the money due to plaintiffs under the terms of the Settlement Agreement and is not "commissions" as that term is defined by the ISRA. Further, this money was not earned by plaintiffs in their capacity as "sales representatives" in that they did not earn this money via a contract with JT & T to solicit orders; thus, plaintiffs do not meet the definition of a "sales representative" as that term is defined by the ISRA.

It is unnecessary for this Court to opine as to the very different situation with which its colleague Judge Alesia was confronted. Instead, as the ensuing discussion reflects, the situation here is one in which Fuji has fallen into the error described by legal scholar Abraham Lincoln in one of this Court's favorite aphorisms drawn from that source of practical wisdom:

> If you call a tail a leg, how many legs has a dog?
> Five? No, calling a tail a leg don't make it a leg.

Here is no question that Fuji expressly fits the definition of "principal" under Act §1(3), that Turner was undoubtedly Fuji's "sales representative" within the Act §1(4) definition and that the amounts that Fuji agreed to pay Turner under the Plan were indisputably "commissions" within the unambiguous definition of Act §1(1). And wholly unlike the characterization that Judge Alesia employed in the last sentence earlier quoted from AA Sales

5

to describe the situation before him, the money that Fuji contracted to pay Turner under the Plan *was* earned by him in his capacity as a sales representative, taking into account what the parties mutually recognized to be the value that was attributable to the continuity of Fuji business that Turner had established over nearly 1-1/2 decades in that capacity.

In sum, Turner's Count II readily survives Fuji's Rule 12(b)(6) motion. That motion is denied, and Fuji's previously-filed Answer to Count II will stand, except that this Court strikes the following language from each of Answer Count II ¶¶1 through 23:

> Furthermore, Defendant has filed a Motion to Dismiss Count II for the reasons set forth in the Motion and Memorandum in Support of said Motion.

/s/ Milton I. Shadur
Milton I. Shadur
Senior United States District Judge

Date: July 10, 2000

6